## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**MANUEL M.,**[1]

   **Plaintiff,**

             **Case No. 2:20-cv-12388**
  **v.**           **Magistrate Judge Norah McCann King**

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

   **Defendant.**

### OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the applications of Plaintiff Manuel M. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381 *et seq.* Plaintiff appeals from the final decision of the Commissioner of Social Security denying those applications.[2] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court the Court reverses the Commissioner's decision and remands the matter for further proceedings.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.
[2] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

## I.      PROCEDURAL HISTORY

Plaintiff filed applications for disability insurance benefits and supplemental security income on January 3, 2017, and December 19, 2016, respectively, alleging that he has been disabled since July 29, 2016. R. 99–100, 125–26, 234–47. The applications were denied initially and upon reconsideration. R. 127–32, 135–40. Plaintiff sought a *de novo* hearing before an administrative law judge. R. 141–42. Administrative Law Judge Peter Lee ("ALJ") held a hearing on June 12, 2019, at which Plaintiff, who was represented by counsel and assisted by a Spanish interpreter, testified, as did a vocational expert. R. 29–69. In a decision dated June 25, 2019, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from July 29, 2016, Plaintiff's alleged disability onset date, through the date of that decision. R. 15–23. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on July 7, 2020. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On June 4, 2021, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 7.[3] On June 8, 2021, the case was reassigned to the undersigned. ECF No. 8. The matter is ripe for disposition.

## II.     LEGAL STANDARD

### A.      Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  In contrast, the Court reviews the ALJ's factual findings to

---

[3]The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)

("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at \*3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at \*4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at \*4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at \*4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing

4

*Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

### B.    Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c), 416.920(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at §§ 404.1509, 416.909. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. §§ 404.1520(e),

(f), 416.920(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 416.920(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

## III.    ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 32 years old on his alleged disability onset date. R. 22. Plaintiff met the insured status requirements of the Social Security Act through December 31, 2021. R. 17. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between July 29, 2016, his alleged disability onset date, and the date of the decision. *Id.*

At step two, the ALJ found that Plaintiff's degenerative disc disease with radiculopathy and obesity were severe impairments. R. 17–18.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 18.

At step four, the ALJ found that Plaintiff had the RFC to perform sedentary work subject to various additional limitations. R. 18–22. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as an order picker, route truck driver, and deliverer (outside). R. 21–22.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs–*e.g.,* jobs as a call-out operator, an addressing clerk, and an order

clerk—existed in the national economy and could be performed by Plaintiff. R. 22–23. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from July 29, 2016, his alleged disability onset date, through the date of the decision. R. 23.

Plaintiff disagrees with the ALJ's findings at steps three and four and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Memorandum of Law,* ECF No. 16. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 24.

## IV.   SUMMARY OF RELEVANT MEDICAL EVIDENCE

Plaintiff was involved in a motor vehicle accident on September 7, 2015. R. 466. In June 2016 and following a lumbar discography, R. 519-22, Marc A. Cohen, M.D., Plaintiff's treating orthopedic surgeon, diagnosed a lumbar disk herniation at L5-S1 and lumbosacral radiculopathy. R. 514. On September 22, 2016, and in an effort to address Plaintiff's continued complaints of back and leg pain, Dr. Cohen performed an open lumbar laminectomy with lateral recess decompression for stenosis and an open lumbar micro-posterolateral discectomy at the L5-S1 level. R. 514–16, 524–25. Despite improvement in his radiculopathy, Plaintiff's discogenic pain continued. R. 517–18, 533. Chiropractic treatment, including therapy and injections, did not alleviate Plaintiff's pain. R. 533.

On January 25, 2017, Dr. Cohen ordered a lumbar MRI and dynamic flexion extension x-rays to evaluate the area of surgery. *Id*. On that same day, Dr. Cohen also completed a three-page, check-the-box, and fill-in-the-blank form entitled, "General Medical Report." R. 504–06

("2017 opinion"). Dr. Cohen reported that he had first examined Plaintiff on March 8, 2016, and had seen Plaintiff on an as needed basis since that time. R. 504. Dr. Cohen diagnosed spinal stenosis, *id*., and opined that Plaintiff could lift and carry 10 pounds, stand and/or walk up to two hours per day, and sit for less than 6 hours per day; and that Plaintiff's ability to push and/or pull were "[l]imited[.]" R. 505. "It is my medical opinion that patient is perm[a]nently disabled." *Id*.

Radiographic studies performed in March 2017 revealed epidural fibrosis and retrolisthesis at the L5-S1 level and Plaintiff complained of a tingling like sensation radiating across into his right lower extremity and radiating neck pain down across the tops of his shoulders, more to the right than to the left. R. 553–55, 557–58. Plaintiff was diagnosed with disc herniations at C3-C4 and C4-C5. He continued to report neck pain radiating down across his right arm and persistent low back pain for which he underwent epidural injections on June 29, 2017. R. 560–61. Plaintiff reported 50% relief, but with continued pain and evidence of cervical radiculopathy. R. 563–65. On June 26, 2018, Plaintiff underwent an anterior cervical discectomy and interbody fusion, prosthetic PEEK cage, and anterior cervical segmental instrumentation, all at the C4-C5 level. R. 570–71. Postoperative diagnoses were cervical radiculopathy, intractable cervical neck pain, and cervical herniated disc with foraminal impingement at the C4-C5 level. R. 570.

At a February 26, 2019, office visit, R. 585–86, Dr. Cohen noted Plaintiff's residual issues with his low back and cervical spine. R. 585. On physical examination, Plaintiff had a normal gait but difficulty on right toe-heel walking. *Id*. Dr. Cohen reported the following findings regarding the range of motion of Plaintiff's lumbar and cervical spine:

> **LUMBAR SPINE RANGE OF MOTION (in degrees):** Decreased range of motion of the lumbosacral spine. Pain from forward flexion to -20 degrees of extension, bringing him to neutral increases back pain. Evidence of lumbar muscle paravertebral spasm. Decreased sensation in the right S1 nerve root. Decreased

9

right S1 reflex. Positive straight leg raise bilaterally at 50 degrees increasing back pain. Pain on palpation of the L5-S1 interspace.

| | Flexion | Extension | Left Rotation | Right Rotation | Left Side Bending | Right Side Bending |
|---|---|---|---|---|---|---|
| Examinee | 40 | 00 | 10 | 10 | 10 | 10 |
| Normal | 90 | 30 | 30 | 30 | 30 | 30 |

**CERVICAL SPINE RANGE OF MOTION (in degrees):** Decreased range of motion of the cervical spine from normal. Trapezius and posterior cervical interspinous muscle spasm. Negative Spurling test Decreased sensation in the CS nerve root on the right. Negative shoulder impingement. Normal motor function.

| | | Right | Left |
|---|---|---|---|
| Cervical Flexion | (0 – 50) | 30 | 30 |
| Lateral Flexion | (0 – 45) | 30 | 30 |
| Rotation | (0 – 80) | 10 | 10 |
| Extension | (0 – 60) | 0 | 0 |

*Id*. Dr. Cohen concluded: "Unfortunately the patient has residual complaints and physical findings from his surgery and will not be able to return back to gainful employment." R. 586.

On that same date, Dr. Cohen also completed a two-page, check-the-box, and fill-in-the-blank form entitled, "Residual Functional Capacity Questionnaire." R. 587–88 (hereinafter referred to, together with the treatment note from the same date, as "2019 opinion"). Dr. Cohen indicated that he had seen Plaintiff monthly and that his prognosis was guarded. R. 587 (further reflecting an illegible diagnosis). Dr. Cohen identified Plaintiff's symptoms as follows: back pain, right leg pain, neck pain, and weakened back. *Id*. Dr. Cohen opined that Plaintiff's symptoms and associated impairments were serious enough to frequently interfere with the attention and concentration needed to perform simple work-related tasks and that Plaintiff would need to recline or sit down during a hypothetical eight-hour workday in excess of the typical 15-minute break in the morning, 30-60 minute lunch break, and the typical 15-minute break in the afternoon. *Id*. Dr. Cohen further opined that Plaintiff could walk one city block without resting or significant pain; could sit for 10 minutes at a time; stand/walk for 10 minutes at a time; sit for a

total of one hour out of an eight-hour workday; and stand/walk for a total of one hour out of an eight-hour workday. *Id*. According to Dr. Cohen, Plaintiff would require a job that permits shifting positions at will from sitting, standing, or walking, and would need to take a break every hour for one hour before returning to work. *Id*. Dr. Cohen also opined that Plaintiff could frequently (*i.e.*, one-third to two-thirds of an eight-hour workday) lift and carry less than 10 pounds. R. 588. Dr. Cohen indicated that Plaintiff had limitations in performing repetitive reaching, handling, or fingering and, in response to the question asking him to indicate how long plaintiff "can sustain repetitive movements at one time and total time in an 8-hour workday[,]" Dr. Cohen responded "2 hrs[.]" *Id*. Dr. Cohen denied that Plaintiff was a malingerer and opined that Plaintiff would likely be absent from work more than four times a month as a result of his impairments or treatment. *Id*. According to Dr. Cohen, Plaintiff's impairments were reasonably consistent with his symptoms and with the functional limitations described in the evaluation. *Id*. Finally, Dr. Cohen denied that Plaintiff was physically capable of working an eight-hour day, five days a week on a sustained basis. *Id*.

## V.  DISCUSSION

Plaintiff argues that substantial evidence does not support the ALJ's RFC determination for a limited range of sedentary work because, *inter alia*, the ALJ failed to properly weigh Dr. Cohen's opinions. *Plaintiff's Moving Brief*, ECF No. 16, pp. 29–40. This Court agrees that the ALJ erred in discounting Dr. Cohen's 2019 opinion.[4]

A claimant's RFC is the most that the claimant can do despite the claimant's limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). At the administrative hearing stage, the ALJ is

---

[4] Because the Court finds that the ALJ erred in considering Dr. Cohen's 2019 opinion, the Court does not address the ALJ's consideration of Dr. Cohen's other opinions.

charged with determining the claimant's RFC. 20 C.F.R. §§ 404.1527(e), 404.1546(c), 416.927(e), 416.946(c); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations.") (citations omitted). When determining a claimant's RFC, the ALJ has a duty to consider all the evidence. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, the ALJ need include only "credibly established" limitations. *Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005); *see also Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014) (stating that the ALJ has discretion to choose whether to include "a limitation [that] is supported by medical evidence, but is opposed by other evidence in the record" but "[t]his discretion is not unfettered—the ALJ cannot reject evidence of a limitation for an unsupported reason" and stating that "the ALJ also has the discretion to include a limitation that is not supported by any medical evidence if the ALJ finds the impairment otherwise credible").

In the case presently before the Court, the ALJ determined that Plaintiff had the RFC to perform a limited range of sedentary work:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a), except he can sit for up to six hours in an eight-hour workday with the option to stand or change position no more than five minutes per hour; can stand or walk for two hours in an eight-hour workday; can occasionally climb ramps and stairs but never ladders, ropes, or scaffolds; can frequently balance; and can occasionally stoop, kneel, and crouch, but never crawl. The claimant can occasionally reach overhead and frequently in all other directions and can frequently perform fingering, handling, and balance. In addition, he can never be exposed to unprotected heights or hazardous machinery.

R. 18. In reaching this determination, the ALJ considered Dr. Cohen's opinions, but assigned them limited weight, explaining as follows:

On March 8, 2016, the claimant was evaluated by Dr. Michael A. Cohen, spinal surgeon. With diagnoses of cervical discogenic pain, lumbar disc stenosis, lumbar discogenic pain, and right leg radiculopathy, and given the fact previous treatment did not provide significant relief, Doctor Cohen referred the claimant to a lumbar discography, which was performed on July 14, 2016, and revealed lumbar disc displacement. After surgery, the claimant was prescribed bed rest, non-steroid and anti-inflammatory medications, narcotics, physical therapy, and pain management injections. On subsequent visits, the claimant reported improvement in the lumbar pain and benefits from the surgery, but complained of cervical pain. The back pain continued, and an open lumbar laminectomy with lateral recess decompression for stenosis and open lumbar micro-posterolateral discectomy at the L5-S1 level were performed on September 22, 2016. There was improvement in the radiculopathy, the discogenic pain continued. Pain management injections were administered, but in spite of them, there was residual pain, and radiographic studies performed in February and March 2017, revealed epidural fibrosis and retrolisthesis at the L5-S1 level. Treatment continued up February 16, 2019. He opined that the claimant's complaints were permanent in nature (Exs. 7F at 6 to 55,[5] 15F, and 16F at 1 and 2).

In a medical questionnaire dated January 25, 2017, doctor Cohen stated that [Plaintiff] can lift and carry up to 10 pounds occasionally, stand or walk up to two hours and sit for less than six hours in an eight-hour workday, and opined that the claimant was permanently disabled (Ex. 7F at 3, 4, and 5). *He confirmed these limitations in another report dated February 16, 2019 (Ex. 16F at 3 and 4* [R. 587–88]*).*

R. 19–20 (emphasis added).

Limited weight is given to the January 25, 2017 opinion made by Dr. Michael Cohen, treating physician, stating that the claimant retains the capacity for less than sedentary work and is permanently disabled (Ex. 7F). The assessed work capacity is not supported by the evidence of record and the issue if a claimant is disabled or not is a matter reserved to the Commissioner of Social Security. Doctor Cohen made a previous opinion on October 4, 2016, stating that the claimant was disabled from September 22 to November 28, 2016 (Ex. 1F at 1). Limited weight is also given to this opinion as it is conclusory, unsupported by the evidence, and does not

---

[5] Although Exhibit 7F originally included pages that contained personally identifiable information relating to an individual other than Plaintiff, the offending pages were later removed from the record. ECF Nos. 22, 23, 25. In addition, upon the Court's Order directing the parties to address the effect of the ALJ's reference to these pages, ECF No. 25, the Acting Commissioner explained that the ALJ's citation to the offending pages for the proposition that Dr. Cohen found that Plaintiff's complaints were permanent in nature was harmless error because that reference had no practical effect on the outcome of the case and because neither party disputed that Dr. Cohen had opined that Plaintiff would not be able to return to work. ECF No. 26. Plaintiff did not respond to the Court's Order or to the Acting Commissioner's position on the ALJ's reference to these pages.

meet the durational requirements for disability. *Subsequently, on February 26, 2019, Dr. Cohen gives the opinion that the claimant cannot return to gainful employment (Ex. 16F at 2* [R. 586]*). This opinion is also given limited weight as the opinion is at least partially based on the complaints of the claimant and the determination of ability to work is reserved for the Commissioner. Moreover, the opinion is* [a] *conclusory one that is unsupported by the evidence.*

R. 21 (emphasis added).

Plaintiff challenges the ALJ's consideration of Dr. Cohen's opinions, arguing that the ALJ points to no medical evidence that refutes those opinions, the limitations of which were not included in the RFC. *Plaintiff's Moving Brief*, ECF No. 16, pp. 34–40. Plaintiff further argues that the record is replete with evidence supporting those opinions, including Plaintiff's multiple surgeries and objective evidence of limitations of motion in the lumbar and cervical spines, cervical muscle spasms, and decreased sensation along the C5 nerve root on the right. *Id.* at 39–40 (citing R. 585–86).

For her part, the Acting Commissioner contends that substantial evidence supports the ALJ's RFC determination, arguing that the ALJ considered Plaintiff's medical history and found that Plaintiff's subjective statements were not entirely consistent with the record evidence, and that Plaintiff had reported some relief in his cervical and lumbar pain. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 24, pp. 24–28. The Acting Commissioner also insists that the ALJ properly weighed Dr. Cohen's opinions. *Id.* at 27. The Acting Commissioner specifically argues that the ALJ properly found that statements that a claimant is "disabled" or "unable to work" are reserved to the Commissioner. *Id.* at 27. The Acting Commissioner further contends that, "[w]ith respect to Dr. Cohen's other opinions, the ALJ reasoned that they were not supported by the evidence of record (Tr. 21)." *Id.*

The Acting Commissioner's arguments are not well taken. An ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642

14

F.2d at 704. The ALJ's decision must include "a clear and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed before March 27, 2017,[6] "'[a] cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Nazario v. Comm'r Soc. Sec.*, 794 F. App'x 204, 209 (3d Cir. 2019) (quoting *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)); *see also Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008) (stating that an ALJ should give treating physicians' opinions "great weight") (citations omitted); *Fargnoli*, 247 F.3d at 43 (3d Cir. 2001) (stating that a treating physician's opinions "are entitled to substantial and at times even controlling weight") (citations omitted). However, "[a] treating source's opinion is

---

[6] As previously noted, Plaintiff's claim was filed on January 3, 2017. For claims filed after March 27, 2017, the Commissioner's regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources.

15

not entitled to controlling weight if it is 'inconsistent with the other substantial evidence in [the] case record.'" *Hubert v. Comm'r Soc. Sec.*, 746 F. App'x 151, 153 (3d Cir. 2018) (quoting 20 C.F.R. § 404.1527(c)(2)); *see also Brunson v. Comm'r of Soc. Sec.*, 704 F. App'x 56, 59–60 (3d Cir. 2017) ("[A]n ALJ may reject the opinion of a treating physician when it is unsupported and inconsistent with the other evidence in the record."). "In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Morales*, 225 F.3d at 317 (internal quotation marks and citations omitted). The ALJ must consider the following factors when deciding what weight to accord the opinion of a treating physician: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; (5) the treating source's specialization; and (6) any other relevant factors. 20 C.F.R. §§ 404.1527(c)(1)–(6), 416.927(c)(1)-(6). Accordingly, "the ALJ still may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Sutherland v. Comm'r Soc. Sec.*, 785 F. App'x 921, 928 (3d Cir. 2019) (quoting *Morales*, 225 F.3d at 317); *see also Nazario*, 794 F. App'x at 209–10 ("We have also held that although the government 'may properly accept some parts of the medical evidence and reject other parts,' the government must 'provide some explanation for a rejection of probative evidence which would suggest a contrary disposition.'") (quoting *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994)); *Morales*, 225 F.3d at 317 ("Where . . . the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit[.]"); *Cotter*, 642 F.2d at 706–07 ("Since it is apparent that the ALJ cannot reject evidence

16

for no reason or for the wrong reason, . . . an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper.") (internal citation omitted).

In the case presently before the Court, the ALJ assigned "limited weight" to Dr. Cohen's 2019 opinion that Plaintiff will not be able to return to gainful employment because it "is at least partially based on the complaints of the claimant and the determination of ability to work is reserved to the Commissioner. Moreover, the opinion is [a] conclusory one that is unsupported by the evidence." R. 21 (citing Ex. 16F at 2, R. 586). However, the ALJ was silent as to what weight he assigned the remaining opinions contained in Dr. Cohen's 2019 report, R. 587–88, *i.e.*, that Plaintiff can sit and stand/walk for only 10 minutes at a time; can sit and stand/walk for only one hour out of an eight-hour working day; would need a job that permits shifting positions at will from sitting, standing, or walking; would need to take a break every hour for one hour before returning to work; could frequently lift and carry less than 10 pounds; and would be absent from work more than four times per month (collectively, "the remaining portions of the 2019 opinion"). *See id.* As previously discussed, an ALJ may choose whom to credit but cannot reject evidence for no reason. *Morales*, 225 F.3d at 317.

Even if the ALJ intended to discount the remaining portions of Dr. Cohen's 2019 opinion as "at least partially based on the complaints of the claimant and the determination of ability to work is reserved to the Commissioner [and as a] conclusory one that is unsupported by the evidence," R. 21, the ALJ's reasoning in that regard is still defective. R. 21. It is not clear how or why the ALJ determined that the other portions of the 2019 opinion were "at least partially based on" Plaintiff's complaints. R. 21. As detailed above, Dr. Cohen's contemporaneous examination contains objective evidence to support his 2019 opinion, namely, decreased range of motion of

the lumbosacral and cervical spine, lumbar and cervical muscle spasms, and decreased sensation

in nerve roots, and positive straight leg raise bilaterally at 50 degrees, R. 585. Although an ALJ

"may discredit a physician's opinion on disability that was premised largely on the claimant's

own accounts of [his] symptoms and limitations[,]" *Morris v. Barnhart*, 78 F. App'x 820, 825

(3d Cir. 2003), the ALJ in this action improperly speculated that the other portions of the 2019

opinion were "at least partially based on" on Plaintiff's subjective complaints. *Cf. Morales*, 225

F.3d at 317 (stating that an ALJ may not make "speculative inferences from medical reports");

*Shannon v. Comm'r of Soc. Sec.*, No. 15-6480, 2016 WL 5133741, at *11 (D.N.J. Sept. 20, 2016)

(finding that the ALJ's decision "to assign little weight to Dr. Franck's opinions is not supported

by substantial evidence" because, "while Dr. Franck relied on Plaintiff's subjective complaints,

Dr. Franck also relied upon clinical findings and objective medical evidence, such as a positive

results on straight leg raise tests and MRI results" and, therefore, "[t]he ALJ did not evaluate Dr.

Franck's opinions to the extent they rely upon objective medical evidence. On remand, the ALJ

should do so"); *McDonnell v. Colvin*, No. 315CV00383, 2016 WL 1425798, at *6 (M.D. Pa.

Mar. 18, 2016), *report and recommendation adopted*, No. 3:15CV383, 2016 WL 1446216 (M.D.

Pa. Apr. 11, 2016) (finding that the "ALJ mischaracterized the record in concluding that Dr.

Parmelee's opinion was primarily based on Plaintiff's subjective complaints" where that

physician's examination indicated, *inter alia*, thoracolumbar scoliosis, standing and moving with

difficulty, tenderness in the sacroiliac joint and spine, muscle spasm in her the cervical spine,

lumbar spine, and trapezius muscles, limited range of motion, positive straight leg raise, limited

and painful range of motion in the hip); *Poust v. Colvin*, No. 3:14CV1357, 2015 WL 3405235, at

*5 (M.D. Pa. May 26, 2015) (finding that substantial evidence did not support the ALJ's

assessment of physician's opinion where the "report never states that he based his conclusions on

plaintiff's subjective complaints. Yet, the ALJ speculated that [the physician's] conclusions 'appear to be based on the claimant's subjective complaints" and, in short, "the ALJ found the plaintiff not credible, and therefore, discredited [the physician's] consultative report because it was allegedly based on statements from the plaintiff"); *Keller v. Colvin*, 3:12–CV–01502, 2014 WL 658064 at *9 (M.D. Pa. Feb. 20, 2014) (noting that "positive objective findings" included reduced range of motion of the lumbar spine and muscle spasm).

In applying this reasoning to the other portions of the treating physician's 2019 opinion, the ALJ also found that Dr. Cohen's opinion was a "conclusory one that is unsupported by the evidence." R. 21. As a preliminary matter, the other portions of the 2019 opinion were not conclusory; they provided specific limitations on how long Plaintiff could sit, stand, and walk, how often and the duration of necessary work breaks, how much he could lift and carry, and how often he would be absent from work. R. 587–88. To the extent that the ALJ may have discounted the other portions of the 2019 opinion on the basis that they were "unsupported by the evidence[,]" the ALJ failed to identify any such evidence. R. 21. Nor is it clear from the ALJ's recitation of the evidence at step four how the record undermines Dr. Cohen's opined limitations in the other portions of the 2019 opinion. For example, although the ALJ noted that Plaintiff had undergone physical therapy from September 16, 2016 to March 16, 2017, and that such therapy had provided "some relief for the cervical and lumbar pain[,]" R. 19, and had resulted in "improvement in the lumbar pain" and radiculopathy, R. 20, the ALJ also acknowledged that Plaintiff's cervical and discogenic pain nevertheless continued, ultimately requiring an anterior cervical discectomy and interbody fusion, cervical segmental instrumentation, and prosthetic PEEK cage at the C4-C5 level. R. 20. The ALJ also found, after detailing Plaintiff's testimony about his pain and functional limitations, that these statements were "partially consistent with the

preponderance of the medical evidence." R. 21. Moreover, as detailed above but not expressly

discussed by the ALJ, Dr. Cohen's February 2019 examination revealed, *inter alia*, decreased

range of motion of the lumbar and cervical spines, muscle spasms, decreased sensation in nerve

roots, and pain on palpation. R. 585. Because the ALJ's recitation of the evidence and

assessment of opinion evidence does not clearly explain his finding that the other portions of Dr.

Cohen's 2019 opinion are "unsupported by the evidence[,]" R. 21, the Court cannot

meaningfully review that finding. *See Jones,* 364 F.3d at 505 (stating that an ALJ's decision

must contain "sufficient development of the record and explanation of findings to permit

meaningful review"); *Hardy v. Comm'r of Soc. Sec.*, No. CV 18-12813, 2019 WL 3812450, at *3

(D.N.J. Aug. 14, 2019) ("Here, the ALJ explained that Dr. Kempf's assessment was not

consistent with the record evidence as a whole.[] In the absence of an explanation of the

purported conflicts in the evidence, this statement cannot be meaningfully reviewed."); *Zigarelli*

*v. Comm'r, Soc. Sec. Admin.*, No. CV 18-12690, 2019 WL 3459080, at *4 (D.N.J. July 30, 2019)

(remanding action where the ALJ found the physician's opinion "vague and currently

inconsistent with the evidence of record" but where the ALJ "does not explain in what way he

found the limitation to be vague, nor does he cite to specific  contradictory evidence in the

record.[] Thus, the Court cannot determine whether the ALJ properly discounted Dr. Ranawat's

opinion in this regard"); *Hines v. Colvin*, No. CV 18-13828, 2018 WL 6313499, at *4 (D.N.J.

Dec. 3, 2018) ("Again, however, the ALJ does not indicate what specific portions [of a medical

opinion] are inconsistent [with the record]. These vague citations to the record are insufficient to

'provide a clear and satisfactory explication' of the weight given to Dr. Allegra's opinion in

order to assist a reviewing court in 'perform[ing] its statutory function of judicial review.'")

(citing *Cotter*, 642 F.2d at 704−05).[7]

This Court therefore concludes that remand of the matter for further consideration of

these issues is appropriate.[8] Moreover, remand is appropriate even if, upon further examination

of Dr. Cohen's 2019 opinion and the RFC determination, the ALJ again concludes that Plaintiff

is not entitled to benefits. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin*., No. 18-CV-1949, 2020

WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same

conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec*., No.

CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not

provide an adequate explanation that would enable meaningful review, and the Court once more

cannot determine what role lay speculation played in the ALJ's rejection of this detailed

functional assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734,

at *10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or

misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not

absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings.

---

[7] To the extent that an argument can be made that the ALJ's rationale in discounting the 2017 opinion applies to the other portions of the 2019 opinion, that reasoning is similarly flawed as applied to that latter opinion. As detailed above, both the 2017 opinion and the other portions of the 2019 opinion indicate that Plaintiff can perform less than sedentary work, and the 2017 opinion indicated that Plaintiff was permanently disabled. R. 505, 587–88. The ALJ discounted the 2017 opinion because "[t]he assessed work capacity is not supported by the evidence of record and the issue if a claimant is disabled or not a matter reserved to the Commissioner of Social Security." R. 21. For the reasons previously discussed, the ALJ's rational that the 2017 opinion is "not supported by the evidence of record" is deficient and precludes meaningful judicial review.

[8] Plaintiff asserts other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of Dr. Cohen's 2019 opinion and the RFC, the Court does not consider those claims.

Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision.").

## VI.      CONCLUSION

Accordingly, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Date:  June 15, 2023                    _____*s/Norah McCann King*_____
                                                            NORAH McCANN KING
                                                            UNITED STATES MAGISTRATE JUDGE